RICHARD A. and DIANE J. MAGIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Magin v. Commissioner
Docket No. 6026-79
United States Tax Court
T.C. Memo 1982-383; 1982 Tax Ct. Memo LEXIS 369; 44 T.C.M. (CCH) 397; T.C.M. (RIA) 82383; July 7, 1982
Richard A. Magin, pro se. Edward D. Fickess, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: * Respondent determined deficiencies in petitioners' Federal individual income tax of $ 411.00, $ 742.61, and $ 1,847.00 for 1975, 1976, 1977, respectively. The sole issue for decision is whether petitioners' contributions to the Maginotic Chamber of the Universal Life Church, Modesto, California, were deductible under section 170. [1]
FINDINGS OF FACT *371 Richard A. Magin and Diane J. Magin, husband and wife, declared their legal address to be 3848 Culver Road, Rochester, New York, at the time they filed their amended petition in this case. They filed their Federal joint income tax returns for 1975, 1976, and 1977 with the Internal Revenue Service, Andover, Massachusetts. On their 1975, 1976, and 1977 joint returns, petitioners claimed charitable contributions in the amounts of $ 3,263.40, $ 4,724.00, and $ 8,630.00, respectively. While petitioners did not list the donees of these claimed contributions on their returns, petitioners maintain that all of the claimed contributions were to the Universal Life Church, Inc., Modesto, California (hereinafter referred to as ULC). All of petitioners' alleged donations were deposited into an account entitled "Universal Life Church, Maginotic Chamber, Irondequoit, New York" (hereinafter referred to as the Maginotic Chamber account), account number 040438-2040-01, Manufacturers Hanover Trust Company/Genesee Region. [2] Petitioner claims to be the part-time minister of the Maginotic Chamber, a position for which he receives no salary. Petitioner, however, does not know either the precise location *372 of the Maginotic Chamber or the number of persons in such "congregation." The Maginotic Chamber has no permanent address and is described by petitioner as consisting of "a different combination of elements than normal individuals." The record is devoid of any information regarding the beliefs or practices of the Maginotic Chamber. During 1975, 1976, and 1977, petitioner was the only party who wrote and signed checks on the Maginotic Chamber account and he received the bank statements which pertained to such account. Among the companies which were issued these checks during 1976 were the following: (a) Rochester Gas and Electric Corp. (b) Elite Sanitary Pick-Up, Inc. (c) General Motors Acceptance Corp. (d) Two Guys Dept. Store (e) Rochester Telephone Company (f) Home Mutual Insurance Company
(g) Allstate Insurance Company (h) Commissioner of Motor Vehicles (i) Sea Breeze and Vicinity Water District (j) K-Mart (k) Rochester Savings Bank
In 1976, only one check was issued to ULC on the Maginotic Chamber account; it was in the amount of $ *373 10 and contained a notation that the money was to be used for bookkeeping. In the notice of deficiency, respondent disallowed petitioners' claimed charitable contributions for 1975, 1976, and 1977. OPINION We must determine whether petitioners' contributions to the Maginotic Chamber account were deductible for the years in issue under section 170(a). [3] Central to such determination is whether the Maginotic Chamber, the donee of the claimed contributions, was a religious organization exempt under section 170(c). [4]
*374 Petitioners argue that the Maginotic Chamber is a part of the ULC, an exempt organization, [5] and thus their contributions to the Maginotic Chamber were deductible. Since it has previously been decided that the ULC's exemption is not a group exemption, we summarily reject petitioners' argument. See ; United States v. Toy National Bank, an unreported case ( USTC par. 9344). Consequently, the Maginotic Chamber's status as an organization to which deductible contributions can be made must be determined separately. See ; . Given the record before us, we are unable to find that the Maginotic Chamber qualified as a section 170(c)(2) organization. The record is devoid of any information with *375 respect to the beliefs or practices of the Maginotic Chamber. Indeed, the record contains no information as to the Maginotic Chamber's location or the number of persons belonging to its "congregation." Even the petitioner, who claims to be a part-time minister of the Maginotic Chamber, was unable to specify its location or size. All the record establishes with respect to the Maginotic Chamber is that it is "a different combination of elements than normal individuals." Consequently, we are unable to find that the Maginotic Chamber was "organized and operated exclusively for religious, [or] charitable * * * purposes * * *." Sec. 170(c)(2)(B). Furthermore, even if we were to find that the Maginotic Chamber was "organized and operated exclusively for religious, [or] charitable * * * purposes * * *" during the years in issue, the record establishes that petitioners' contributions to the Maginotic Chamber inured to their own private benefit. See sec. 170(c)(2)(C); . Aside from one $ 10 check, [6] the checks written on the Maginotic Chamber account were issued to department stores, utility companies, *376 insurance companies, the General Motors Acceptance Corporation, Elite Sanitary Pick-Up, Inc., Sea Breeze and Vicinity Water District, and the Commissioner of Motor Vehicles. The record reveals that the Maginotic Chamber had no location and aside from petitioners, no members. Given the complete control which petitioner exercised over the Maginotic Chamber account during the years in issue, and the nature of the checks which were issued on such account, we think that petitioners used their "contributions" for their own private benefit and, therefore, such "contributions" do not meet the requirements for deductibility as set forth in section 170(c)(2)(C). [7]Consequently, we must uphold respondent's determination. *377 To reflect the foregoing, Decision will be entered for the respondent. Footnotes
*. This case was tried before Judge Sheldon V. Ekman who died before deciding the case. By order of the Chief Judge this case was reassigned to Judge Darrell D. Wiles for disposition. ↩
1. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue.↩
2. There is no evidence that any persons other than petitioners made deposits in the Maginotic Chamber account.↩
3. Sec. 170(a) provides for the allowance of deductions for charitable contributions, as defined in sec. 170(c). ↩
4. Sec. 170(c) defines a charitable contribution to include a contribution or gift to or for the use of -- * * * (2) A corporation, trust, or community chest fund, or foundation -- * * * (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals; (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; and (D) which is not disqualified for tax exemption under section 501(c)(3) by reason of attempting to influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office.↩
5. In , the Universal Life Church, Inc. of Modesto, California, was held to be a qualifying religious organization, exempt under section 501(c)(3). See also sec. 170(c)(2).↩
6. This $ 10 check was issued to the ULC, but it contained a notation that it was for bookkeeping. Thus, it is probable that the $ 10 check issued to the ULC was a fee for bookkeeping services rather than a contribution. See ; . ↩
7. See ; .↩